* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments of the parties. The appealing party has shown good grounds to reconsider the evidence. Accordingly, the Full Commission REVERSES the Opinion and Award of Deputy Commissioner Donovan and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and that the Industrial Commission has jurisdiction over the parties and of the subject matter. *Page 2 
2. All parties have been correctly designated and that there is no question as to the misjoinder or non-joinder of parties.
3. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
4. Subject to defendants' fraud and fraud in the inducement defenses seeking dissolution of the employment relationship, abinitio, an employment relationship existed between the employee and employer.
5. Defendant-employer was insured at the time of plaintiff's alleged specific traumatic incident to his back by National Interstate Insurance Company.
6. Plaintiff's average weekly wage is $1,136.73 which yields a compensation rate of $757.82 per week.
7. Plaintiff has been receiving weekly temporary total disability compensation in the amount of $754.00 (the maximum rate for the year of plaintiff's injury) from 10 September 2007 to the present.
 * * * * * * * * * * * ISSUES
1. Whether plaintiff is temporarily totally disabled as a result of the injury by accident of 10 September 2007?
2. Whether plaintiff is entitled to further medical treatment under the Act?
3. Whether plaintiff has reached maximum medical improvement?
4. Whether plaintiff is entitled to permanent partial disability benefits?
5. Whether plaintiff is entitled to rehabilitation services?
 * * * * * * * * * * * *Page 3 EXHIBITS
1. The parties stipulated the following documentary evidence:
 a. Stipulated Exhibit #1: Medical records
 b. Stipulated Exhibits #34: Applications for employment
 c. Stipulated Exhibits #5, 67: Fitness reports
The following were submitted post-hearing and are included in a separate stipulation packet:
 d. Stipulated Exhibit #8: Redacted surveillance report
 e. Stipulated Exhibits #910: CD videos of surveillance
 f. Stipulated Exhibit #11: Medical record of Dr. Max Cohen
 g. Stipulated Exhibit #12: Medical questionnaire of Dr. Max Cohen
 h. Stipulated Exhibit #13: FMCSA Diabetes Mellitus exemption letter
 i. Stipulated Exhibit #14: Work note
 j. Stipulated Exhibit #15: Medical record of Dr. Max Cohen
2. In addition to Stipulated Exhibit(s), the following Exhibits were admitted into evidence:
 a. Defendants' Exhibit #1: Discovery responses
 b. Defendants' Exhibit #2: Federal regulations
 * * * * * * * * * * *
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 43 years old and had graduated from high school. Defendant-employer is a transportation company that is *Page 4 
engaged in the business of transporting cargo across the United States and is based in Kernersville, North Carolina.
2. In May 2004, plaintiff was diagnosed as having Type I Diabetes Mellitus. Since receiving this diagnosis, plaintiff has taken insulin to regulate his blood sugar. Plaintiff was advised by Dr. Larry Cantley, an endocrinologist, that diabetes is a very serious disease with potential complications. On 26 May 2004, Plaintiff was also advised by his family physician, Dr. William Kelly, of the seriousness of diabetes and the importance of monitoring his blood sugar levels.
3. On 11 May 2005, plaintiff applied for a truck driver position with Best Cartage, a sub-company of defendant-employer. Plaintiff received an offer of employment contingent upon his successfully passing a commercial driver fitness examination and receiving a commercial driver's license. At the time plaintiff applied for employment with defendant-employer he was aware that he was an insulin dependent Type I diabetic but did not disclose this fact to defendant-employer.
4. On June 14, 2005 plaintiff underwent a commercial driver fitness examination conducted by Lee A. Gray, P.A.-C. Plaintiff completed Sections one and two of the first page of the form and signed and dated same. Although plaintiff filled in the box for diabetes with an "x" in the "no" box, at the hearing before the deputy commissioner, plaintiff testified that he left the box next to the section on diabetes blank.
5. Plaintiff underwent the evaluation and was certified by the medical practitioner as being fit to drive a motor carrier vehicle. Thereafter, defendant-employer hired plaintiff as a long-haul truck driver. Plaintiff's duties included driving long distances to deliver merchandise and involved some loading and unloading of trucks. *Page 5 
6. On 13 August 2007, plaintiff suffered a specific traumatic incident while working for defendant-employer. While unloading merchandise from the trailer of his truck, plaintiff grabbed a falling dresser that weighed approximately 400 pounds. He felt an immediate onset of acute pain in his low back. Plaintiff reported the injury to defendant-employer by phone. Rather than seek medical treatment in Kansas, plaintiff elected to return to North Carolina.
7. Upon arriving in North Carolina, defendant-employer instructed plaintiff to seek medical treatment at Primecare of Kernersville. Plaintiff presented to Primecare on 30 August 2007, and was diagnosed as having low back sciatica. He was assigned work restrictions of medium work with only occasional pushing, pulling, climbing, lifting, bending, stooping, squatting, and kneeling.
8. Plaintiff returned to work in a light duty, non-driving position for defendant-employer until 10 September 2007, when his light-duty restrictions could no longer be accommodated.
9. Defendants accepted plaintiff's claim and provided medical treatment. Plaintiff received treatment from authorized physicians Dr. Jeffrey Beane and Dr. Richard Ramos at Greensboro Orthopaedic Center. On 12 October 2007, Dr. Richard Ramos examined plaintiff and ordered an MRI of the lumbar spine. Dr. Ramos also assigned work restrictions of no lifting over ten pounds, no bending, stooping, or squatting, and no prolonged standing or sitting.
10. An MRI was performed on 19 October 2007, and showed Grade 1 spondylolisthesis at L5-S1 with severe biforaminal stenoisis. Plaintiff underwent conservative treatment, including steroid injections and physical therapy but the treatment was unsuccessful. Ultimately, plaintiff was referred to Dr. Max Cohen at Greensboro Spine Scoliosis Clinic. Plaintiff presented to Dr. Cohen on 15 April 2008. Dr. Cohen diagnosed plaintiff as having unstable L5-S1 *Page 6 
spondylolisthesis with severe biforaminal narrowing and bilateral lower extremity radiculopathy left greater than right, and he recommended surgical intervention.
11. On 25 June 2008, plaintiff underwent an A-LIF laminectomy and fusion at L5-S1 performed by Dr. Cohen. Plaintiff was written out of work following the surgery. On 6 November 2008, Dr. Cohen assigned work restrictions of no lifting greater than 20 pounds, no prolonged sitting or standing, and no repetitious bending, stooping, or squatting.
12. On 8 January 2009, Dr. Cohen reported that plaintiff had reached maximum medical improvement. Dr. Cohen provided plaintiff with a 20% permanent partial impairment rating to the back and opined that plaintiff was able to return to work full duty.
13. On 20 May 2009, Dr. Cohen revised plaintiff's work restrictions based solely on plaintiff's complaints of pain and not any anatomical, medical, or surgical reason. Dr. Cohen noted that plaintiff could return to work light duty with permanent restrictions of no sitting, standing, or walking more than two hours without a 15-minute break.
14. On 12 March 2009, plaintiff was videotaped by Hinson Investigations loading his furniture and other personal belongings in a truck without assistance and taking them into a storage unit in preparation for moving to Florida.
15. Plaintiff continues to receive temporary total disability benefits in the amount of $754.00 per week. However, plaintiff has failed to produce medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment, evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment, evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment, or evidence that he has obtained other employment at wages less *Page 7 
than his pre-injury wages. The greater weight of the evidence shows that plaintiff has failed to prove that he was temporarily totally disabled after January 8, 2009 when he was released to work full duty at maximum medical improvement.
16. At no time prior to 13 August 2007 did plaintiff disclose the fact that he was an insulin dependent Type I diabetic to defendant-employer. Plaintiff concealed his insulin dependent diabetic status from defendants from the time of his hire until his hospitalization for back surgery. It was not until plaintiff underwent medical treatment that defendants first learned of plaintiff's diabetic condition from his medical records. After learning that plaintiff concealed the fact that he is an insulin dependent diabetic, Best Services Group terminated plaintiff from employment for multiple violations of company policy.
17. Although plaintiff testified that he told defendants that he was diabetic, the Full Commission does not find plaintiff's testimony credible. The greater weight of the credible evidence shows that plaintiff knowingly withheld the fact that he was diabetic from defendants. However, the greater weight of the evidence does not show that Plaintiff committed fraud under N.C. Gen. Stat. § 97-88.2 in order to obtain workers' compensation benefits.
18. The Full Commission finds that plaintiff prosecution of this claim is based upon stubborn unfounded litigiousness and was without reasonable grounds .
 * * * * * * * * * * *
Based on the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a specific traumatic injury arising out of and in the course of his employment with defendant-employer on 13 August 2007. N.C. Gen. Stat. § 97-2(6). *Page 8 
2. In order to qualify for compensation under the Workers' Compensation Act, a claimant must prove both the existence and extent of disability. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may prove disability by producing (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment, (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment, (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment, or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
3. In the present case, plaintiff was at maximum medical improvement on 8 January 2009, and was released to return to work full duty. Although, plaintiff was later assigned light duty restrictions on 20 May 20 2009 based solely upon plaintiff's subjective complaints, plaintiff has not met his burden of proving that he was unable to obtain employment after a reasonable effort or that it was futile for him to seek employment because of other factors after January 8, 2009. Id.
4. As a result of the compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $754.00 per week beginning on the date of injury and continuing until 8 January 2009 when plaintiff was released to full duty at maximum medical improvement. N.C. Gen. Stat. § 97-29.
5. At the end of the healing period, plaintiff is entitled to receive compensation for total or partial disability under N.C. Gen. Stat. §§ 97-29 or 97-30 or compensation for permanent *Page 9 
partial disability under N.C. Gen. Stat. § 97-31, but not both.Collins v. Speedway Motorsports Corp.,165 N.C. App. 113, 598 S.E.2d 185 (2004). As plaintiff has failed to prove total disability following his release at maximum medical improvement on 8 January 2009, plaintiff is entitled to permanent partial disability of 20% to his back which equates to 60 weeks of compensation at a rate of $757.82. N.C. Gen. Stat. § 97-31(23). Defendants are entitled to a credit against any permanent partial disability due for all temporary total disability benefits paid after plaintiff reached maximum medical improvement on 8 January 2009. Collins v. Speedway Motor Sports Corp.,165 N.C. App. 113, 598 S.E.2d 185 (2004); Arnold v. Wal-Mart,154 N.C. App. 482, 571 S.E.2d 888 (2002).
6. Plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability, including vocational rehabilitation services, subject to the statute of limitations prescribed in N.C. Gen. Stat. §§ 97-25; 97-25.1. N.C. Gen. Stat. § 97-2(19).
7. Based upon plaintiff's unreasonable prosecution of this claim, defendants are entitled to a credit against any benefits owed to plaintiff for the costs of the proceedings including reasonable attorney fees to be determined by affidavit. N.C. Gen. Stat. § 97-88.1.
8. Plaintiff's actions do not rise to the level of fraud and shall not be fined a penalty under N.C. Gen. Stat. § 97-88.2.
 * * * * * * * * * * *
Based on the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission makes the following award:
 AWARD *Page 10 
1. Defendants shall pay plaintiff temporary total disability compensation at the rate of $754.00 per week beginning on the date of injury and continuing until 8 January 2009.
2. Defendants shall pay plaintiff permanent partial disability of 20% to his back which equates to 60 weeks of compensation at a rate of $757.82. This amount is subject to a credit for all temporary total disability benefits paid after plaintiff reached maximum medical improvement on 8 January 2009.
3. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff above is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel.
4. Defendants shall pay medical expenses incurred or to be incurred when medical bills have been submitted according to established Industrial Commission procedures.
5. Defendants shall pay the costs. However, the amounts awarded to plaintiff above are subject to a credit for the costs of the proceedings in this matter including reasonable attorney fees to be determined by affidavit.
6. Defendants shall submit to the Full Commission within 15 days an affidavit of hours spent defending this claim before the Full Commission.
This the 15th day of March 2010.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING: *Page 11 
 S/_____________ PAMELA T. YOUNG CHAIR
 S/_____________ DANNY LEE McDONALD COMMISSIONER *Page 1